**\*Not For Publication**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

The Honorable Freda L. Wolfson, U.S.D.J.

| | | |
|---|---|---|
| LOTTOTRON, INC., | : | Civil Action No. 05-4562 |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| GTECH CORP., | : | |
| | : | |
| Defendant. | : | |

For Plaintiff:
Joseph F. Posillico, Esq.
Synnestvedt & Lechner LLP
1101 Market Street, Suite 2600
Philadelphia, Pennsylvania 19107

For Defendant:
Liza M. Walsh, Esq.
Jennifer C. Critchely, Esq.
Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey 07068

**Wolfson, District Judge:**

This patent litigation involves allegations of infringement of Plaintiff Lottotron, Inc.'s ("Lottotron") U.S. Patent No. 5,921,865 (the "'865 patent"), entitled Computerized Lottery Wagering System, by Defendant GTech Corp.'s ("Gtech") E-Scratch electronic gaming product. The Court previously construed certain terms in the '865 patent that were disputed by both parties. In the instant matter, Lottotron moved for summary judgment for infringement and Gtech cross-moved for summary judgment for noninfringement. Based upon the following reasons, Gtech's motion is GRANTED.

## BACKGROUND

**A.    Overview of the '865 Patent**

Lottotron is the owner by assignment of the '865 patent. As the Description of the Preferred Embodiments provides, "the invention herein is a computerized telecommunications lottery wagering system." '865 patent at col. 3, lines 19-20. In other words, the '865 patent describes and claims a lottery wagering method that allows subscribers to place a lottery wager remotely using a telephone or other means to purchase a lottery ticket. In particular, Lottotron asserts that the patent also makes clear, "[t]he [patented] system may also be accessed over the Internet . . . ." Id. at Col. 3, lines 46-48. As the Court recited in its Claim Construction Opinion, the '865 method can be summarized briefly as a method by which an individual accesses a system remotely to enroll with the system by setting up an account and establishing a credit balance for wagering money, then

selects a lottery game to play, and finally places a lottery wager for the selected game using the balance.  Indeed, the patentees of the '865 patent make clear in the specification that the purpose of their computerized lottery wagering system is to permit an individual to place a wager remotely without having to physically go to a lottery agent to place a wager.  Id. at Col. 1, Lines 64-67.

### B.    The Accused eScratch System

The eScratch is a Kansas Lottery game that requires a player first physically go to a Kansas State Lottery retail outlet to place a wager by purchasing a lottery ticket with a specified wager amount.  Defendant's Statement of Undisputed Facts  (Defendant's Statement) at ¶¶ 12, 15; Plaintiff's Response to Defendant's Statement of Undisputed Facts (Plaintiff's Response) at ¶¶ 12, 15.  Once the player buys the ticket at the lottery store, and the ticket is printed by the eScratch system, the money has been wagered, and the player cannot obtain a refund.  Defendant's Statement at ¶ 13.  Subsequently, the player receives a paper eScratch ticket from the terminal at the store.  Id. at ¶ 16.  Gtech claims that the outcome of the wager is immediately determined by the eScratch system.  See Mr. Paramasivam's Dep at 37:3-16; 92:15-93:7; see also Id.; Plaintiff's Response at ¶ 13.

Once a player has placed his or her wager by purchasing the ticket at the store, he or she can choose one of two methods for revealing the outcome of the wager: (1) the player can access the eScratch system over the internet to reveal the predetermined outcome of the wager, Defendant's Statement at ¶¶ 14, 18; or (2) the player can simply redeem the ticket at

the store to reveal the outcome of the wager.  Id. at ¶ 18.  If the player chooses to use the eScratch website to reveal the outcome of the wager, he or she must access the website printed on the eScratch ticket.  The player does not enter any personal information that identifies him or herself.  Defendant's Statement at ¶ 21; Plaintiff's Response at ¶ 21. Rather, the player enters only the ticket's identification number in order to log onto the website.  Id.  After logging onto the eScratch website, the player can elect to play one or more eScratch amusement "reveal" games on the website.  Id. at ¶ 22.

Each reveal game is predetermined to reveal the outcome of the wager that was previously placed at the store.  Mr. Paramasivam's Dep. at 98:8-15.  In other words, when the player selects one of the games on the website, the eScratch system accesses the information about the predetermined outcome of the wager placed at the store, and  "plays" the game in such a way that, at the conclusion of the game, the outcome of the game reveals the outcome of the wager.  Defendant's Statement at ¶ 23; Plaintiff's Response at ¶ 23.[1]  If the eScratch system reveals that the player has a winning ticket, he or she must physically go back to a Kansas Lottery store to claim the prize money.  Defendant's Statement at ¶ 24.

## C.      The Court's Construction of the Disputed Terms

The claims of the '865 patent at issue in this motion, claims 8-12, 18-20 and 24-26,

---

[1]To the extent Lottotron disputes the factual basis of this statement, it asserts that the predetermined outcome of the "reveal" game is unknown to the player prior to him or her playing the "reveal" game, much like the purchaser of a scratch-off ticket does not know whether that ticket is a winner until he or she scratches off the playing surface.  Plaintiff's Response ¶ 23. Lottotron, however, does not dispute that eScratch "reveal" games reveal the predetermined outcome that was already established at the lottery store when a player purchases the lottery ticket.

read as follows:[2]

> 8.  Method for automatically accepting a plurality of different wagering formats over a computer system, comprising:
>
> receiving incoming communications from prospective wagerers and routing each of said communications according to which one of said plurality of different wagering formats is requested by a subscriber;
>
> providing a series of messages requesting subscriber wagering information particular to one or more of said plurality of wagering formats;
>
> requesting identification information from said prospective wagerers; and
>
> requesting said prospective wagerers to enter a wager.
>
> 9.  The method of claim 8 wherein said wagering formats comprise different game types.
>
> 10.  The method of claim 9 wherein said game types include lotteries.
>
> 11.  The method of claim 8 wherein said wagering formats comprise game formats.
>
> 12.  The method of claim 11 wherein said game formats comprise a plurality of lottery games.
>
> *   *   *
>
> 18.  The method of claim 8 wherein said incoming communications from said prospective wagerers are made from a computer.
>
> 19.  The method of claim 18 wherein said incoming communications from said prospective wagerers are made from a computer network.

---

[2]In its motion for summary judgment of infringement, Lottotron only moves on claims 8-12 and 18-20, while reserving its right to move on claims 24-26.  On the other hand, Gtech moves on all of the claims.

20.  The method of claim 19 wherein said computer network comprises the Internet.

\*   \*   \*

24.   A method of automatically accepting a plurality of different wagering formats over a computer system, comprising:

receiving incoming computer communications from prospective wagerers and routing each of said communications according to which one of said plurality of different wagering formats is requested by a subscriber;

providing a series of messages requesting subscriber wagering information particular to said one or more of the plurality of wagering formats selected by said subscriber;

requesting identification from said prospective wagerers; and

requesting said prospective wagerers to enter a wager.

25.   The method of claim 24 wherein said incoming computer communications are from a computer network.

26.  The method of claim 25 wherein said computer network comprises the Internet.

'865 patent at col. 12, lines 35-12 & col. 13, lines 1-8.  Based upon the asserted claims, claims 8 and 24 are independent claims from which the remaining asserted claims depend. All of the asserted claims are method claims that recite a sequence of steps.  Therefore, both parties are in accord that on these motions it is only necessary to address the two independent claims, claims 8 and 24, because if it is established that these two claims are not infringed, none of the other claims can be infringed as they depend from either of the two independent claims.  Furthermore, since claim 8 and claim 24 are virtually identical, the

infringement analysis will be the same.

From the claims in dispute, the parties reduced their claim construction disputes to four limitations: 1) "wager"; 2) subscriber" / "prospective wagerer"; 3) "identification information" / "identification"; and 4) "wagering format." In so doing, the parties agreed upon the constructions of "subscriber" and "subscriber wagering information particular to one or more of said plurality of wagering formats." The following table sets forth the parties' agreed constructions of those limitations:

| Limitation | Agreed Construction |
|---|---|
| subscriber | one who wishes to enroll or wager with the system |
| subscriber wagering information particular to one or more of said plurality of wagering formats. | wagering amount and game information (such as lottery numbers selected or quick pick selection) particular to one or more of the plurality of wagering formats. |

On November 7, 2007, the Court issued its claim construction decision of the remaining disputed terms as follows:

| Disputed Terms | Lottotron's Proposed Constructions | Gtech's Proposed Constructions | Court's Determinations |
|---|---|---|---|
| "Wager" | "Wager" involves a risk of an infinite variety of things apart from money i.e., pride, avoidance of embarrassment. | "Wager" involves a risk of a sum of money. | "Wager" involves a risk of a sum of money. |

| "Subscriber/ prospective wagerer" | Both terms are used interchangeably to mean "one who wishes to enroll or wager with the system." | "A subscriber who accesses the computer system to enter one or more wagers." | "Prospective wagerer" means "a subscriber who accesses the computer system to enter one or more wagers." |
|---|---|---|---|
| "Identification information/ identification | "Identification information, such as an identification number." | "Identification information" is information that identifies a prospective wagerer including an account number and a personal identification number. | "Identification information" is information that identifies a prospective wagerer including an account number and a personal identification number. |
| "Wagering format" | "The kind of lottery games that are available, such as Keno, Lotto, and 3- or 4-digit lotteries." | "A wagering game in which the outcome of the game determines the outcome of the associated wager." | "The kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries." |

As a preliminary matter, Lottotron makes two assertions with respect to the Court's construction of the terms.  Specifically, Lottotron asserts that with respect to the phrase "enter a wager," the parties agreed that there must be a risk "on the outcome of an event that is uncertain, at least to the person entering the wager."  Indeed, the Court's decision of this particular phrase mainly focused on the word "wager," which had been disputed by the parties, as to whether it extended only to money or something else.  The Court resolved that controversy by concluding that wager involves only a "risk of a sum of money."  In that

connection, the Court did not include the remaining agreed upon language.  Accordingly, consistent with the parties agreed language, as to the phrase "enter a wager," and with this Court's construction, "enter a wager" shall mean "to risk of a sum of money on the outcome of an event that is uncertain, at least to the person entering the wager."

Lottotron, next, asserts that both parties agreed that "identification information" is information "that identifies a prospective wagerer."  Gtech, during claim construction, initially proposed that the terms "identification information" in claim 8 and "identification" in claim 24 should be construed to mean "information that identifies a prospective wagerer, including an account number and a personal identification number."  Lottotron argued in response that Gtech's construction improperly limited the claims to the preferred embodiment and that the terms should be construed broadly to mean "identification information, such as an identification number."  In order to reduce the number of claim construction issues, Gtech subsequently decided to delete the phrase "including an account number and a personal identification number" from its proposed construction.  Accordingly, the terms "identification information" and "identification" mean "information that identifies a prospective wagerer."  As such, the Court will utilize this construction to reflect the parties' agreement.  See Vivid Techs., Inc. v. Am Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999)(courts shall construe disputed terms "only to the extent necessary to resolve the controversy").  All other terms shall be consistent with the Court's previous ruling.  The Court now turns to the question whether the accused eScratch system infringes upon the '865

patent.

## DISCUSSION

### A.     Standard of Review

Summary judgment serves to "isolate and dispose of factually unsupported claims." Celtex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). Summary judgment is just as appropriate in a patent case as in any other civil case. Paragon Podiatry Lab. v. KLM Labs., Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993).

The patentee must prove infringement by a preponderance of the evidence. Mannesmann Demag Corp. v. Enginerred Metal Prods. Co. Inc., 793 F.2d 1279, 1282 (Fed. Cir. 1986). To prove infringement of a patent claim to a method, the patentee must prove that every step in the method is performed by the accused process, either literally or under the doctrine of equivalents. Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc., 216 F.3d 1367, 1370 (Fed. Cir. 2000). The absence of any one limitation of a claim in the accused process precludes a finding of literal infringement of that claim. Kahn v. GMC, 135 F.3d 1472, 1477 (Fed. Cir. 1998). Summary judgment of noninfringement is, therefore, appropriate where no reasonable jury could find that the accused process carries out each and

every step of the claim or its equivalent.  Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1163-64 (Fed. Cir. 2004).  On the other hand, summary judgment of infringement is proper when "no reasonable jury could find that any limitation in a properly claim is missing from an accused device."  PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005).  Where the parties do not dispute any relevant facts regarding the accused product but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment.  Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997)

Specifically, for literal infringement, the accused product or process must "contain each limitation of the claim exactly" and there cannot be "any deviation from the claim." Litton Sys. v. Honeywell, 140 F.3d 1449, 1454 (Fed. Cir. 1998); see also Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001).  If each limitation is not satisfied exactly, infringement may still be found under the doctrine of equivalents, but only if the difference between the claim limitation not present literally and the corresponding element in the accused device or process is "insubstantial."  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39-40 (1997); Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1139, 1351 (Fed. Cir. 2003).  An accused device may infringe under the doctrine of equivalents only if it possesses all of the limitations of the relevant claim either literally or equivalently.  See Warner-Jenkinson Co., 520 U.S. at 40-41. Whether an element of the accused device is equivalent to a claim limitation depends on

-11-

"whether the substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." Id.  However, "when a specification excludes certain prior art alternatives from the literal scope of the claims and criticizes those prior art alternatives, the patentee cannot then use the doctrine of equivalents to capture those alternatives." L.B. Plastics, Inc. v. A merimax Home Prods., Inc., 499 F.3d 1303, 1309 (Fed. Cir. 2007).  The application of this doctrine is a question of law amenable to summary judgment. Id.

**B.     Application of the Claims to the Accused eScratch System**

As noted, supra,  because of the interdependency nature of the majority of the claims asserted, the Court's infringement analysis focuses on claims 8 and 24.  See Background Section, supra.   To demonstrate literal infringement, Lottotron must prove by a preponderance of the evidence that the eScratch system infringes upon every element of the asserted claim in the '865 patent.  See Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934 (Fed. Cir. 1987)(en banc), cert. denied, 485 U.S. 961 (1998).  Conversely, if Gtech can show that the eScratch system does not infringe any one of the asserted claims, a finding of nonfringement is proper.  Gtech essentially argues that the eScratch System does not infringe on any of the asserted claims of the '865 patent on three independent grounds.  First, the eScratch system does not request information from "prospective wagerers" or anything equivalent.  Second, the eScratch system does not request that a prospective wagerer "enter a wager."    Finally, the system does not request "identification information" or

-12-

"identification" from a prospective wagerer.[3]

        1.    *Prospective Wagerer*

Claims 8 and 24 of the '865 patent provide that this is a method by which a computer system accepts "incoming communications from prospective wagerers and routing each of said communications according to which one of said plurality of different wagering formats is requested by a subscriber." '865 patent, col. 12, lines 35-41. The claims further provide that the method requests "identification information from said prospective wagerers" and requests "said prospective wagerers to enter a wager." The Court has construed the term "prospective wagerer" to mean "a subscriber who accesses the computer system to enter one or more wagers." Using such definition, Lottotron contends that the eScratch website infringes upon the above-asserted claims because it provides a method for receiving incoming communications over the Internet from subscribers who wish to enter one or more wagers with the eScratch system. On the other hand, Gtech contends that an eScratch user does not access the website as a "prospective" wagerer because the user places a wager before accessing the website by purchasing the eScratch ticket at the store. The Court agrees with Gtech's contention.

There is no dispute that eScratch is a game equivalent to an instant lottery game. Mr.

---

      [3]In its opening brief for motion for summary judgment of infringement, Lottotron argues the literal presence of all the elements of the asserted claims in the eScratch system by comparing the '865 patent claims with the eScratch system. See Lottotron's Brief in Support of its Motion for Summary Judgment of Literal Infringement at p. 12. While it is Lottotron's burden to prove literal infringement, the Court finds it sufficient to confine this Opinion to a discussion of the three grounds by which Gtech argues that the eScratch system does not infringe on the '865 patent.

Paramasivam's Dep. at 17.  After purchasing a paper ticket at a Kansas lottery retail store, the purchaser can elect to log into the eScratch website, outlined on the paper ticket, to play certain games to reveal the outcome of the purchased ticket.  Id. at 19.  In the "How to Play" section of the eScratch game,[4] the instructions clearly indicate that a player must purchase an eScratch ticket at a Kanasas Lottery retail location.  See Ms. Critchely's Cert. at Ex. F, p. G0001.  Similar to purchasing a lottery ticket, the eScratch purchaser could fill out a play slip or let the retailer pick a selection.  Id.  It is at this point that the purchaser fills out the wager amount per ticket he/she wants to play.  Id. ("Tickets with wagers of $1, $2 and $5 per single ticket purchase give you two plays for each dollar spent and tickets with wagers of $10, $20 and $50 per single ticket purchase give you one play for each dollar, but with better overall odds of winning and higher possible prizes").  After selecting the wager amount of the ticket, the retailer then prints a ticket for the purchaser.  Id.  The purchaser can either check at the store for the result, or he/she can log onto the eScratch website to play a variety of games to reveal the result.  Id. at G0001-G0002.  By the time the purchaser accesses the eScratch website, he or she has already placed a wager by buying the lottery ticket at the store.  See Id. at G0003 ("With eScratch, you have many ways to play and win! *Depending on the price of the ticket purchased*, you could win up to $50,000)(emphasis added); Id. at G0004 ("Playing an eScratch game is fast, fun and easy!  To start, go to any participating Lottery retailer and purchase an eScratch ticket.  Once you've purchased your ticket, use the web site

---

[4]The content was extracted from http://kslottery.com/eScratch/eScratchHowToPlay.htm and included in Ms. Critchley's Certification at Exhibit F.

address on the ticket to access the eScratch web site from your PC"); <u>see also</u> Mr. Paramasivam's Dep. at pp. 20, 37, 92-93.

Despite the distinction that the purchaser buys the eScratch ticket in a lottery store, Lottotron argues in response that the wager is not concluded until the results are known to the eScratch player, which does not occur until the online game is played, and during that game, the eScractch player is risking particular dollar amounts commensurate with the value of his or her ticket.  Dr. Stevenson's Decl. at ¶¶ 11, 13.  Relying on its expert, Dr. Robert L. Stevenson, Lottotron bases its argument upon this Court's construction of the phrase "enter a wager," which means "to risk of a sum of money on the outcome of an event that is uncertain, at least to the person entering the wager."  The Court finds Lottotron's argument unpersuasive because it conflates the two components of the eScratch game and ignores the definition of the term "prospective."  As explained above, in order for a player to access the eScratch website, he/she must visit a retail lottery store to purchase an eScratch ticket; in other words, to place his/her wager at the store.  It is during this particular step that the player places his/her wager, and not on the website.  Lottotron, improperly, fuses the two distinct processes into one and argues that the purchaser of the eScratch game does not know the outcome until a reveal game is played on the website.  Such interpretation ignores the term "prospective," as the claim language requires the automated system to perform the step of "requesting said <u>prospective</u> wagerers to enter a wager."  Simply put, an eScratch online user who has already placed a wager by purchasing a ticket at the store cannot be a prospective

wagerer (i.e., a subscriber who accesses the computer system to enter one or more wagers) when he/she has already placed a wager physically in a store.  Furthermore, the fact that an eScratch player can elect, without playing on the website, to find out the result of his/her eScratch winnings at the store supports the above distinction.[5]

The eScratch system also does not infringe upon the '865 patent under the doctrine of equivalents.  Lottotron argues that a putative disavowal of claim scope must be clear and unmistakable, and the '865 patent does not expressly disavow a system in which a wagerer purchases a physical ticket and then completes the wager online to determine the outcome. No matter that the '865 patent does not expressly disavow this particular system, such as the eScratch system, the doctrine of equivalents simply cannot be used to extend certain claims to effectively eliminate a claim element in its entirety.  Warner-Jenkinson, 520 U.S. at 29. Accordingly, if the Court were to apply the doctrine broadly here, it would eliminate the term "prospective" in the claim.

Furthermore, "when a specification excludes certain prior art alternatives from the literal scope of the claims and criticizes those prior art alternatives, the patentee cannot then use the doctrine of equivalents to capture those alternatives."  L.B. Plastics, 499 F.3d at

---

[5]Lottotron argues that Gtech has not presented evidence to show that any eScratch purchaser has ever redeemed a ticket in the store.  As such, Lottotron, citing a slew of cases, asserts that an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes.  See Lottotron's Opposition to Gtech's Motion for Summary Judgment of Noninfringement at p. 12. Lottotron's argument is misplaced.  The fact that an eScratch player can elect to redeem his/her ticket in the store shows that the wager is irrevocably risked as soon as the ticket is purchased at the store, not on the eScratch website.

1309-10.  Here, the patentee criticizes prior art methods that require a player to physically go to a lottery agent to place a wager by purchasing a lottery ticket.  '865 patent, col. 1, lines 22-26 ("Typically, in the United States in order to play a state lottery either one physically goes into a designated state lottery agent to place a wager, or subscribes to a lottery service that plays daily or weekly their same lottery numbers for a fee").  The patentee later criticized the prior art, including this traditional method, and touted the advantage of its computerized wagering system.  <u>See</u> Mr. Fiscella's Dep. at pp. 20, 46-47. ("The idea was to purchase lottery tickets from a remote location, not having to go to the store to purchase").[6]  In light of these statements in the specification criticizing prior art, as a matter of law, the doctrine of equivalents does not cover the eScratch system, which clearly requires a player to physically go into a store to place a wager by purchasing a lottery ticket, instead of wagering money on a computer system.

2.   *Enter a Wager*

Both claims 8 and 24 of the '865 patent provide that the method of purchasing a lottery ticket requests "prospective wagerers to enter a wager."  The term "wager" has been construed by the Court to mean "risking a sum of money."  Lottotron re-argues the point that wager is not completed until an eScratch player signs onto the website and plays a game to

---

[6]Lottotron asserts that as a matter of claim construction that the patentee's subjective intent of what his claims mean is largely irrelevant to the claim's objective meaning and scope.  <u>See</u> <u>Akmai Techs</u> <u>v. Cable & Wireless Internet Servs.</u>, 344 F.3d 1186, 1194 (Fed. Cir. 2003).  However, the Court used the patentee's testimony, in this context, not to determine the meaning or scope of the particular claim, but to clarify and support the '865 patent specification's language criticizing prior art.

reveal the predetermined outcome.  Again, to support its contention, Lottotron relied solely on Dr. Stevenson's Certification.  The Court notes that Lottotron does not dispute the underlying factual basis of the eScratch game, but rather, it argues that because wager involves risking a sum of money on the outcome of an event that is uncertain, at least to the person entering the wager, the wager should necessarily extend from the time the eScratch player actually makes a wager at the store by purchasing a paper ticket to when the eScratch player signs onto the website, plays a game and the outcome is revealed.  To bolster its argument, Lottotron points out that the eScratch website makes clear that a wagerer does not know the winnings for a particular ticket until the entire value of that ticket has been used to play the eScratch games.

Having already determined that a prospective wagerer, or the eScratch player, does not place any wagers when signing on to the eScratch website, Lottotron's argument fails. The fact that an eScratch player does not know the outcome of the wager until it is revealed to him or her on the eScratch website is not germane to the infringement analysis.  The distinction that must be drawn is that Lottotron accuses the eScratch website of infringement of this particular claim, and the claim language requires that the automated system perform the step of "requesting said prospective wagerers to enter a wager."  See Lottotron's Brief in Support of Its Motion for Summary Judgment of Literal Infringement ("Lottotron's Brief in Support") at p. 13.  However, the eScratch website merely permits the user to reveal the predetermined outcome of the wager by revealing whether the purchased ticket is a winner

-18-

and, if so, the amount awarded.  See Defendant's Statements at ¶¶ 14, 23.  The eScratch system does not permit a user to place a wager by risking a sum of money on the website. Id. at ¶ 11; see Ms. Critchley's Cert., Ex. F at G00001, G00003, G00004.  Indeed, the placement of the wager ( and the risk of a sum of money) takes place at the store, not on the website.  Therefore, the eScratch player's risk of a sum of money occurs completely independent of the eScratch website.  Accordingly, the Court finds summary judgment of noninfringement appropriate, since there is no genuine issue of fact that a user does not "enter a wager"on the eScratch website.

Both parties' arguments pertaining to the doctrine of equivalents of this limitation parallel the arguments asserted with respect to the "prospective wagerer" limitation. Accordingly, for identical reasons stated above, the Court finds that the eScratch system also cannot meet the "enter a wager" limitation under the doctrine of equivalents because the specification of the '865 patent criticizes prior art methods that require a player to physically go to a lottery agent to place a wager by purchasing a lottery ticket.

      3.    *Identification Information*

The '865 patent provides that the automated system requests "identification information from said prospective wagerers." '865 patent at col. 12, lines 45-48.  Lottotron asserts that the eScratch website infringes upon this limitation because it indicates that, to play an eScratch game, a wagerer must enter the identification number for the ticket purchased from the retailer in order to be recognized by the system.  See Lottotron's Brief

in Support at p. 13.  Lottotron's assertion misses the mark.

In plain language, the limitation specifically states that identification information is used to identify the prospective wagerer, or "a subscriber who accesses the computer system to enter one or more wagers."  Further, the parties have already agreed that "subscriber" is "one who wishes to enroll or wager with the system."  Accordingly, by reading these definitions together, the identification information is used to specifically identify the person who is enrolling or wagering with the system.  Aside from the fact that an eScratch player is not a subscriber or a prospective wagerer, the ticket ID number requested by the eScratch website does not identify the player himself/herself, but rather the identity of the purchased eScratch ticket.  Mr. Paramasivam's Dep. at pp. 30-31, 80.  The identity of the player remains anonymous.

Nevertheless, Lottotron argues that according to the answers to Frequently Asked Questions ("FAQ") on the eScratch website, "[t]he eScratch web site will recognize you by your ticket ID."[7]  According to Lottotron, because of such language, a wagerer entering a ticket identification number is not anonymous, and at the very least, the ticket identification number that an online eScratch player must enter distinguishes that player from anyone who is not holding that particular ticket.  See Dr. Stevenson's Decl. at ¶ 14.  The Court remains unconvinced by such conclusory argument, particularly since the eScratch ticket can be

---

[7] Interestingly, Lottotron's FAQ quote, albeit taken out of context, is extracted from a response to the question "Can I remain anonymous when playing eScratch?"  When read in the context of the answer and question, this excerpt clearly states that a user of the eScratch website remains anonymous because the website only requests for the ticket ID number, which does not identify the player.

transferred, such as a gift, to any adult.  See Ms. Critchley's Cert., Ex. F at G00021 ("eScratch tickets make great gifts.  Please remember that if you are purchasing a ticket for someone else, they must be 18 or older").  While the ticket ID number distinguishes one ticket from another ticket, the ID number does not identify the particular player; this is crucial, especially in light of the claim language that the information requested identifies a "prospective wagerer."  Furthermore, Lottotron's contention that the claim limitation here does not require a wagerer to provide a name, address, or the like, is a red-herring because the inquiry is not how the system would identify the prospective wagerer, but rather if the system identifies the particular wagerer.  Accordingly, summary judgment of noninfringement is also appropriate because the Court finds that the eScratch system does not require information to identify the particular player.[8]

Clearly, the doctrine of equivalents can not be applied in this instance to find infringement.  By equating information that identifies an eScratch ticket to information that identifies an individual would eliminate the requirement in the Court's construction that the

---

[8]Lottotron suggests, although it did not formally assert this argument, that the eScratch game meets the claimed step of requesting "identification information" because the website, in addition to entering a ticket ID number, is capable of requesting a personal identification number.  Such argument is with merit since the website never asks to enter any pin number.  In fact, during Mr. Paramasivam's deposition, he testified that the eScratch system is capable of accepting pin numbers if the administrator chooses to configure it in that way.  However, there is no evidence in the record to show, or any suggestions by Lottotron, that any player actually enters a pin number when signing on to the eScratch website.  Without actually accepting pin numbers as a way to identify a player, this scenario may not be used to prove infringement because a method claim is not infringed by a system unless the system is actually performing the claimed steps.  See Goldenberg, 373 F.3d at 1163-64 (summary judgment of noninfringement is appropriate when the accused process or method fails to carry out each and every step of the claim or its equivalent).

information must "identif[y] [the] prospective wagerer."  The doctrine cannot be  used to extend claim coverage so broadly as to vitiate the claim limitation.  See Warner-Jenkinson, 520 U.S. at 29; see also Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000); Tronzo v. Biomet, Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998)("If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law")(citations omitted).

## <u>CONCLUSION</u>

For the reasons set forth herein, Gtech's summary judgment motion for noninfringement is granted in its entirety.  As Gtech has moved for noninfringement on all asserted claims, the Court finds that the accused method of the eScratch game does not literally infringe upon any of the asserted claims of the '865 patent; as a result, Lottotron's claims of infringement are dismissed.


Date: September 29, 2008                                    ___/s/Freda L. Wolfson___
_____                                                                  Freda L. Wolfson, U.S.D.J.